Nos. 99,724,
99,891

STATE OF KANSAS, *Appellee*, v. AARON VALLADAREZ *Appellant*.
(206 P.3d 879)

Opinion filed May 8, 2009.

*Christopher S. O'Hara*, of O'Hara & O'Hara, of Wichita, argued the cause and was on the brief for appellant.

*Douglas W. McNett*, of Larned, argued the cause, and *John G. Sauer*, county attorney, and *Stephen N. Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This decision construes conflicting statutes to determine if a district magistrate judge has jurisdiction to conduct felony arraignments and accept guilty or no contest pleas to felony charges. Aaron Valladarez, who pled no contest to two felony charges before a district magistrate judge, argues a district magistrate judge does not have this authority and, as a result, his felony convictions are void. In addition, Valladarez argues the sentencing judge committed reversible error by not asking him personally if there was any legal reason judgment should not be rendered.

Applying rules of statutory construction to the conflicting statutes regarding arraignment jurisdiction, we conclude that a district magistrate judge who has been assigned to conduct felony arraignments by the chief judge of the judicial district has jurisdiction to conduct a felony arraignment and to comply with the due process requirements inherent in accepting a guilty or no contest plea, including determining if there is a sufficient factual basis to support the plea under K.S.A. 22-3210. In this case, the record on appeal is insufficient to determine if such an assignment was made. Consequently, the case is remanded with directions for further proceedings on that issue. On the sentencing issue, we conclude the sentencing judge erred in failing to ask Valladarez if there was any legal reason judgment should not be rendered, but the error was harmless and does not require resentencing if on remand it is determined the district magistrate judge had jurisdiction to conduct felony arraignments.

### Factual and Procedural Background

These issues arise after two separate criminal cases were filed against Valladarez. In 07CR111, the State charged him with one count of sale of methamphetamine, a severity level 3 drug felony, in violation of K.S.A. 2008 Supp. 65-4161. Several months later, in an unrelated case, 07CR373, the State charged him with one count

of possession of methamphetamine, a severity level 4 drug felony, in violation of K.S.A. 2008 Supp. 65-4160.

On July 26, 2007, Valladarez appeared with counsel before a district magistrate judge for a preliminary hearing in both cases. As the hearing began, the State announced it would amend the charge in 07CR111 to possession of methamphetamine in exchange for Valladarez' waiver of the preliminary hearings in each case and his agreement to plead guilty or no contest to both possession charges.

Following the parties' acknowledgment of the plea agreement, the district magistrate judge explained to Valladarez his right to a preliminary hearing in each case and the specific rights he would have at such a hearing. When asked, Valladarez indicated he understood his rights and had no questions. The district magistrate judge subsequently accepted Valladarez' waiver of his preliminary hearing in both cases.

Next, Valladarez was arraigned on the charges. After Valladarez waived a formal reading of the complaints, the district magistrate judge informed Valladarez of the maximum possible sentences under the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq.*, for each criminal offense and explained the sentences could run concurrent or consecutive. Additionally, the district magistrate judge advised Valladarez of the constitutional rights he would be waiving by pleading guilty or no contest and inquired whether Valladarez had any questions and if he was satisfied with the advice and counsel of his defense attorney. Additional questions focused on the voluntariness of the pleas and on Valladarez' ability to understand the pleas and his rights. The State then proffered a factual basis to support each plea, which the district magistrate judge found to be sufficient. Valladarez entered no contest pleas, and the district magistrate judge ordered a presentence investigation report.

Valladarez was sentenced in the Ford County District Court by a district judge who denied Valladarez' motion for a dispositional departure sentence and imposed concurrent terms of 28 months' imprisonment on each felony drug conviction.

Valladarez timely appeals. Our jurisdiction arises from K.S.A. 20-3018(c) (a transfer from the Court of Appeals on this court's own motion).

*Issue 1: District Magistrate Judge's Jurisdiction*

  *a. Preservation of Issue and Scope of Review*

The issue of the district magistrate judge's jurisdiction is raised for the first time on appeal. Typically, issues must be raised before a district court in order to be considered by an appellate court. *Trotter v. State*, 288 Kan. 112, Syl. ¶ 2, 200 P.3d 1236 (2009). There are exceptions to this general rule, however, including a well-recognized and long-standing exception allowing subject matter jurisdiction to be raised at any time. This exception recognizes that " 'parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel. Nor can parties convey jurisdiction on a court by failing to object to its lack of jurisdiction.' [Citations omitted.]" *State v. Elliott*, 281 Kan. 583, 588, 133 P.3d 1253 (2006). Thus, the fact that Valladarez failed to challenge subject matter jurisdiction in the district court does not bar his appeal. See *Trotter*, 288 Kan. 112, Syl. ¶ 4; *Elliott*, 281 Kan. at 588-89; *State v. Minor*, 197 Kan. 296, 299-300, 416 P.2d 724 (1966).

The issue that Valladarez now raises regarding the district magistrate judge's jurisdiction requires us to interpret the statutes that define the subject matter jurisdiction of a district court and its judges. See Kan. Const., art. 3, § 6(b) ("The district courts shall have such jurisdiction in their respective districts as may be provided by law."); *State v. Woolverton*, 284 Kan. 59, 67, 159 P.3d 985 (2007) (court's subject matter jurisdiction is governed by statute). Issues based on statutory interpretation present questions of law over which appellate courts exercise unlimited review. *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008); *Woolverton*, 284 Kan. at 67; *State v. Johnson*, 283 Kan. 649, 652, 156 P.3d 596 (2007).

The rules of statutory interpretation are well known, beginning with the fundamental rule that effect must be given to the intent of the legislature as expressed. Thus, when the language of a statute is plain and unambiguous, courts must apply that language rather than determine what the law should or should not be, speculate as to legislative intent, add something not readily found in the statute, resort to canons of statutory construction, or consult legislative his-

tory. *In re Adoption of A.A.T.*, 287 Kan. 590, 627, 196 P.3d 1180 (2008), *cert. denied* 566 U.S. 1184 (2009). In this case, however, ambiguity arises because various statutes are in conflict and, as a result, the canons of statutory construction must be applied and legislative history may be consulted for indications of legislative intent.

### b. Conflicting Statutes

In arguing that district magistrate judges do not have jurisdiction to conduct felony arraignments, Valladarez relies on K.S.A. 22-2202(3), which defines "arraignment" to mean "the formal act of calling the defendant *before a court having jurisdiction to impose sentence for the offense charged,* informing the defendant of the offense with which the defendant is charged, and asking the defendant whether the defendant is guilty or not guilty." (Emphasis added.) As Valladarez notes, under this statute a district magistrate judge lacks authority to arraign a defendant on felony charges because a district magistrate judge does not have jurisdiction to impose a felony sentence. See K.S.A. 20-302b(a) (limiting district magistrate judge's criminal trial jurisdiction to traffic and tobacco infractions and misdemeanor charges).

Valladarez suggests that this limitation is consistent with Congress' restriction of a federal magistrate judge's arraignment jurisdiction to cases where a defendant consents to the magistrate's accepting a plea. See, *e.g., United States v. Montano*, 472 F.3d 1202, 1204 (10th Cir. 2007) ("A [federal] magistrate judge has jurisdiction to conduct a plea hearing and subsequently accept a defendant's plea where the defendant consents."); 2 Crim. Prac. Manual § 46:10, p. 46-9 (West 2009) (federal district magistrate judges are permitted to accept guilty pleas if defendant expressly consents); see also *Gomez v. United States*, 490 U.S. 858, 873-76, 104 L. Ed. 2d 923, 109 S. Ct. 2237 (1989) ("additional duties" clause of 28 U.S.C. § 636[b][3] does not authorize a federal magistrate judge to conduct jury selection in felony trial without defendant's consent); *United States v. Mendez-Lopez*, 338 F.3d 1153, 1158-59 (10th Cir. 2003) (defendant's consent to federal magistrate judge's taking of verdict extended to magistrate judge's handling

of the deliberating jury unless a need arose to consult the district judge). However, the United States Magistrate Judges Act, 28 U.S.C. §§ 631, 636 (2006), does not apply to proceedings in a state court, and the choices Congress made in determining a federal magistrate judge's jurisdiction do not require the Kansas Legislature to impose similar limitations on Kansas district magistrate judges. Consequently, the federal authorities cited by Valladarez are neither controlling nor persuasive.

In addition to these federal authorities, Valladarez relies on three Kansas cases—*State v. Boone*, 218 Kan. 482, 543 P.2d 945 (1975), *cert. denied* 425 U.S. 915 (1976); *State v. Bloomer*, 197 Kan. 668, 421 P.2d 58 (1966), *cert. denied* 387 U.S. 911 (1967); and *State v. Talbert*, 195 Kan. 149, 402 P.2d 810, *cert. denied* 382 U.S. 868 (1965). In *Boone*, the court cited *Bloomer* and *Talbert* as authorities supporting its holding that "[t]he magistrate in a felony case has no jurisdiction to arraign the accused or to accept a plea of guilty of the charge. [Citation omitted.]" 218 Kan. at 485. To further emphasize its point, the *Boone* court explained that a district magistrate judge's authority to conduct a preliminary hearing did not equate to the authority to conduct an arraignment, stating: "[A] magistrate conducting a preliminary examination serves a limited function—to determine whether a crime has been committed and whether there is probable cause to believe that the accused committed it." 218 Kan. at 485. Furthermore, "[t]he object of a preliminary examination is not to determine the guilt or innocence of the accused. The examining magistrate has no power to acquit but only the power to discharge from custody." 218 Kan. at 485; see also *Bloomer*, 197 Kan. at 671 (same); *Talbert*, 195 Kan. at 152 (stating that district magistrate judge in felony case " 'has no jurisdiction to arraign the accused or to accept plea of guilty,' " quoting *State v. Jordan*, 193 Kan. 664, Syl. ¶ 3, 396 P.2d 342 [1964], *cert. denied* 380 U.S. 920 [1965]).

What Valladarez' argument ignores is that all three cases—*Boone*, *Bloomer*, and *Talbert*—predate the Kansas Legislature's 1999 statutory amendments to K.S.A. 20-302b(a) and K.S.A. 22-2902(7), which expanded the jurisdiction of district magistrate judges. See L. 1999, ch. 159, secs. 1, 5. The language added to

K.S.A. 20-302b(a) allows a district magistrate judge to "hear felony arraignments subject to assignment pursuant to K.S.A. 20-329." K.S.A. 20-329 allows a chief judge of a judicial district to assign cases. This expanded authority was also added to K.S.A. 22-2902(7), a statute relating to preliminary hearings, by providing: "The judge of the district court, when conducting the preliminary examination, shall have the discretion to conduct arraignment, subject to assignment pursuant to K.S.A. 20-329 and amendments thereto, at the conclusion of the preliminary examination." The phrase "judge of the district court" is defined in K.S.A. 20-301a to include both district judges and district magistrate judges; thus, the 1999 amendment to K.S.A. 22-2902(7) grants district magistrate judges jurisdiction to conduct an arraignment at the conclusion of a preliminary hearing, if assigned to do so.

The State relies on these amendments to K.S.A. 20-302b(a) and K.S.A. 22-2902(7) to support its argument that the district magistrate judge in this case had jurisdiction to arraign Valladarez. While the State is correct that these amendments support its position, ambiguity arises because the 1999 amendments are in conflict with the statute relied on by Valladarez, K.S.A. 22-2202(3), which limits a district magistrate judge's arraignment jurisdiction to traffic and tobacco infractions and misdemeanor charges. When statutes are in conflict, we often state that " '[g]eneral and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling.' [Citations omitted.]" *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 89, 106 P.3d 492 (2005). In this situation, however, an argument can be made that each provision could be considered the "special" statute—K.S.A. 22-2202(3) has a very specific definition of arraignment and K.S.A. 20-302b(a) and K.S.A. 20-2902(7) are specific to district magistrate judges' jurisdiction and specifically mention arraignment in that context. Thus, this rule of statutory construction does not resolve the issue.

Under other rules of statutory construction, when statutes are ambiguous, courts may look to the historical backgrounds of the

enactments, the circumstances attending passage, the purposes to be accomplished, and the effects the statutes may have under the various constructions suggested. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1041, 190 P.3d 245 (2008). Here, the legislative record reveals the 1999 amendments were specifically intended to extend the jurisdiction of district magistrate judges.

In hearings on the proposed legislation, the Senate Judiciary Committee was presented with the "Report of the Organization of Courts Subcommittee to the Kansas Citizens Justice Initiative," which recommended several changes in the scope of a district magistrate judge's jurisdiction. One recommendation was to authorize district magistrate judges "to conduct arraignments, take pleas and to order pre-sentence investigations in felony cases." The report contained an analysis of the proposal, stating:

"Magistrate judges are authorized to conduct arraignment type proceedings in misdemeanor cases and are generally familiar with the arraignment process. Magistrates are also authorized to conduct preliminary hearings in felony cases but they are not authorized to arraign a felony defendant. Customarily arraignment follows immediately after the preliminary hearing. However, because a magistrate judge cannot arraign, arraignments are often delayed because a district judge may not be readily available. The resulting delay and scheduling problems are exacerbated in multi-county districts where only one or two district judges sit." Minutes, Sen. Judiciary Comm., March 18, 1999, attach. 2-21 to 2-22.

Repeated throughout the testimony of other proponents of the legislation—the Board of Indigents' Defense Services, the Kansas District Judges Association, and the Kansas District Magistrates Association—was the view that allowing district magistrate judges to conduct felony arraignments would add efficiency to the process and should be an available option when a chief judge of a judicial district deems it appropriate. The sole opponent to the legislation, the Kansas County and District Attorneys Association, recognized these potential benefits as well and did not object to magistrate judges conducting arraignments; rather, the Association sought protections against speedy trial problems that might arise if a district magistrate judge did not have authority to immediately place the case on a trial calendar of a district judge. Overall, however,

the testimony and legislative history reflects a clear intent to expand district magistrate judges' jurisdiction to cover felony arraignments.

In addition, under another rule of statutory construction, it is presumed that the legislature intends to change the law when it enacts an amendment. *State v. Gracey*, 288 Kan. 252, 260, 200 P.3d 1275 (2009). Considering the combination of this presumption and the legislative history, we hold that K.S.A. 20-302b(a) and K.S.A. 22-2902(7) grant a district magistrate judge jurisdiction to conduct a felony arraignment if the chief judge of the judicial district has assigned the district magistrate judge to do so. We further conclude that the legislature intended for that grant of jurisdiction to control over the conflicting provisions of K.S.A. 22-2202(3), which would have the effect of limiting a district magistrate judge's arraignment jurisdiction to traffic and tobacco infractions and misdemeanor charges.

The question remains whether Valladarez is correct that the power to arraign does not allow a district magistrate judge to (1) determine whether there is a sufficient factual basis to support the plea or (2) to adjudge a defendant guilty of felony charges. In asserting the power to arraign does not extend to these functions, Valladarez relies on K.S.A. 22-3205(a), which defines the procedure for an arraignment, stating: "Arraignment shall be conducted in open court and shall consist of reading the complaint, information or indictment to the defendant or stating to the defendant the substance of the charge and calling upon the defendant to plead thereto." Valladarez notes that accepting a plea of guilty or no contest requires several additional steps as specified in K.S.A. 22-3210:

"(a) Before or during trial a plea of guilty or *nolo contendere* may be accepted when:

(1) The defendant or counsel for the defendant enters such plea in open court; and

(2) in felony cases the court has informed the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea; and

(4) the court is satisfied that there is a factual basis for the plea."

Because these provisions require more than having a defendant state a plea, Valladarez argues the district magistrate judge was required to bind Valladarez over to allow a district court judge to fulfill the procedures required by K.S.A. 22-3210. Valladarez bolsters this argument by referring back to the holdings in *Boone*, *Bloomer*, and *Talbert* and the provisions of K.S.A. 20-302b(a), which grant a district magistrate judge the authority to adjudicate guilt or innocence in misdemeanors but not felonies. He argues that finding a factual basis to support a plea and declaring a defendant guilty upon acceptance of a plea is equivalent to trying the case. In summary, Valladarez explains his argument by stating in his brief that "[i]n order for a case to be subject to assignment pursuant to K.S.A. 20-329, a Defendant would have to have entered a plea of not guilty. K.S.A. 20-302b does not allow a Magistrate Judge to hear a plea of guilty or no contest."

Clearly, no statute explicitly limits the district magistrate judge to hearing only a plea of not guilty in a felony case. Moreover, traditionally an arraignment has not been so limited. As this court has stated:

" 'The arraignment in a criminal proceeding is the formal act of calling the defendant before a court having jurisdiction to impose sentence for the offense charged; informing the defendant of the offense charged by reading the complaint, information or indictment or stating to him the substance of the charge; and asking defendant *whether he is guilty or not guilty or to otherwise plead as permissible by law*. [*State v. Rosine*, 233 Kan. 663, Syl. ¶ 3, 664 P.2d 852 (1983)].' " (Emphasis added.) *State v. Smith*, 247 Kan. 455, 458, 799 P.2d 497 (1990).

See also K.S.A. 22-2202(3) (defining "arraignment" as including the step of "asking the defendant whether the defendant is guilty or not guilty.").

When a defendant is asked whether he or she is guilty or not guilty, if the defendant replies guilty there are serious ramifications. Indeed, as the United States Supreme Court recognized in *Boykin v. Alabama*, 395 U.S. 238, 242, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction." Because the plea has the effect of a confession and a waiver of the

right to trial, the Court in *Boykin* held it was necessary to ensure the plea was voluntarily and intelligently made. To assure this due process standard was met, the Court imposed requirements on the States, specifying the federal constitutional rights of the defendant and the information that must be given to and obtained from the defendant. 395 U.S. at 242-44. K.S.A. 22-3210, which was enacted in 1970 (L. 1970, ch. 129, sec. 22-3210) codified these requirements and defined due process standards to be accorded in Kansas courts.

In other words, to properly arraign a defendant who wishes to plead guilty or no contest, the judge conducting an arraignment must comply with these procedures. See *State v. Edgar*, 281 Kan. 30, 36-37, 127 P.3d 986 (2006). Reflecting these requirements, this court has referred to these due process requirements as a part of the arraignment procedure. See, *e.g., State v. Shaw*, 259 Kan. 3, 6-11, 910 P.2d 809 (1996) (relating to defendant waiving preliminary hearing and during the arraignment stipulating to a factual basis for the plea); *James v. State*, 220 Kan. 284, 287, 553 P.2d 345 (1976) (stating that "proceedings in this case upon arraignment and the receiving of petitioner's plea of guilty measured up in all respects to the federal standards made applicable to the states by the *Boykin* decision").

As a result, if a district magistrate judge was not able to accord due process when asking a defendant to state a plea of guilty, not guilty, or no contest, the magistrate judge's authority would be meaningless. Such a result would be inconsistent with another rule of statutory construction, the presumption that the legislature does not intend to enact useless or meaningless legislation. *In re Adoption of G.L.V.*, 286 Kan. at 1041. Alternatively, if the authority was made meaningful to the extent of allowing a defendant to state "guilty" or "no contest" but, following Valladarez' suggestion, the district magistrate judge could not determine if the plea was supported by sufficient facts, the defendant would be burdened with the consequences of having confessed guilt in open court without being given due process until a later hearing before a district judge. See K.S.A. 22-3210(d) (good cause required to withdraw plea of guilty or no contest before sentencing). The result would be an

unreasonable burden on the rights of a defendant to enter a knowing and voluntary plea.

Moreover, the legislative history of the 1999 amendments reflects that the legislature understood and envisioned district magistrate judges accepting felony pleas of guilty or no contest. During the Senate hearings, all of the proponents and opponents of the legislation made statements indicating they understood the proposal to allow district magistrate judges to take a felony plea, and they supported granting that authority. In written testimony, a representative of the Board of Indigents' Defense Services testified:

"Consideration has been given to magistrate judges' ability to handle guilty pleas if they are offered at arraignment. Some attorneys have raised concerns about magistrates' ability and training to take felony guilty pleas. However, the board believes adequate safeguards are in place to ensure that a defendant's rights are protected when a plea of guilty is taken by a magistrate. Simply put, the board feels that, if a magistrate is deemed qualified to bind a defendant over on a felony charge, that same magistrate should also be deemed qualified to take a felony guilty plea." Minutes, Sen. Judiciary Comm., March 18, 1999, attach. 2-26.

Consistent with this expressed intent, the Kansas Legislature took no steps to change the arraignment procedure, to provide that a district magistrate judge could only take some of the steps toward accepting a plea but not all, or to limit a magistrate judge's authority to accept only not guilty pleas. Rather, through the 1999 amendments to K.S.A. 20-302b(a) and K.S.A. 22-2902(7), the legislature intended to grant a district magistrate judge who has been assigned to conduct felony arraignments the jurisdiction to accept a felony plea and to provide due process by complying with K.S.A. 22-3210 when doing so, including determining if there is a sufficient factual basis to support the plea. This determination and the conclusion that a defendant's plea is knowing and voluntary allows a judge of the district court, whether a district judge or district magistrate judge properly assigned, to accept the defendant's plea of guilty or no contest which, as stated by the United States Supreme Court in *Boykin*, 395 U.S. at 242, equates with a conviction. Hence, the district magistrate judge in this case had jurisdiction to accept Valladarez' pleas if the district magistrate judge was assigned to do so by the chief judge of the judicial district.

### c. Assignment in this case

In stating an alternative argument, Valladarez argues the district magistrate judge in this case was not assigned to conduct the felony arraignment. Because there was no discussion in the district court regarding the question of jurisdiction, the record on appeal contains no information regarding the assignment. This lack of support for an assignment in the record, according to Valladarez, means we must conclude there was not an assignment.

These arguments raise a question regarding the appropriate standard of review to be applied when the question is whether a district magistrate judge was assigned to conduct felony arraignments. As previously stated, typically subject matter jurisdiction raises an issue of law because it depends on application of the statutes defining a court's or judge's jurisdiction. Valladarez' arguments suggest, although do not specifically state, that this standard of review is appropriate in this circumstance as well because the assignment should be an order of record in the case which could be reviewed de novo by an appellate court. He seems to suggest an alternative of allowing the assignment to be stated in a local rule or an administrative order of the chief judge.

As Valladarez suggests, when the issue is whether a district magistrate judge has been assigned to conduct felony arraignments by an order of the chief judge of the judicial district or by a local rule, an appellate court can conduct a de novo review of the order or rule and determine if the district magistrate judge has been properly assigned to conduct a felony arraignment in a particular case. However, Valladarez does not point to any requirement that the assignment take one of these forms. K.S.A. 20-302b merely states that district magistrate judges may "hear felony arraignments subject to assignment pursuant to K.S.A. 20-329." In turn, K.S.A. 20-329 provides: "In every judicial district, the supreme court shall designate a district judge as chief judge who shall have general control over the assignment of cases within the district, subject to supervision by the supreme court." See also Supreme Court Rule 107 (2008 Kan. Ct. R. Annot. 186) (same). These provisions do not require a written assignment and, indeed, a written assignment in

all cases would be impractical because often assignments occur through the actions of the chief judge in creating and setting dockets and in devising systems that allow for automatic, administrative assignment of cases. See *Krogen v. Collins*, 21 Kan. App. 2d 723, Syl. ¶ 1, 907 P.2d 909 (1995) ("Pursuant to K.S.A. 20-329, K.S.A. 20-330, and K.S.A. 20-302, with or without a formal written assignment by the administrative [now chief] judge, any district judge has authority to issue an order in any case in the judge's assigned district unless such action would contravene the administrative judge's supervisory authority."). Thus, a written order or court rule is not required in order for a district magistrate judge's assignment to conduct a felony arraignment to be valid.

However, if there is no written order or rule for an appellate court to construe, the question of whether a district magistrate judge has been assigned to conduct a felony arraignment cannot be treated as a question of law; rather, it is a question of fact. See *Kemp v. Kennyj*, 126 Fed. Appx. 504, 507 (2d Cir. 2005) (unpublished opinion) (although federal courts generally recognize subject matter jurisdiction to be question of law, issue of parties' consent to federal magistrate judge's jurisdiction is considered question of fact). Hence, this limited circumstance creates an exception to the general rule that subject matter jurisdiction can be decided for the first time on appeal because appellate courts do not make factual findings. *State v. Thomas*, 288 Kan. 157, 161, 99 P.3d 1265 (2009). Rather, a district court must make factual determinations. See *Kemp*, 126 Fed. Appx. at 507 (remanding for factual determination of federal magistrate judge's jurisdiction based on consent under 28 U.S.C. § 636[c] [2006]).

In this case, the local rules of the Sixteenth Judicial District filed with the Clerk of the Supreme Court, as required by Supreme Court Rule 105 (2008 Kan. Ct. R. Annot. 185), do not address the assignments of that district's magistrate judges. Nor are there any orders included in the record on appeal that address this question. The State attempts to fill this gap by attaching to its brief two memoranda. In one, the chief judge of the Sixteenth Judicial District outlined procedures to be followed to avoid potential speedy trial problems if a district magistrate judge accepts a felony plea.

The second is a recommended colloquy and checklist for use when accepting a guilty or no contest plea. Neither document directly states that the district's magistrate judges are assigned to conduct felony arraignments, but they reflect an expectation that the district's magistrate judges will do so, at least occasionally. Regardless, these documents are not properly before this court because an appendix to a brief is limited to extracts from the record on appeal; it cannot serve as a substitute for the record itself. *State v. Bryant*, 285 Kan. 970, Syl. ¶ 8, 179 P.3d 1122 (2008) ("An appellate court does not consider appended items which are not contained in the record.").

Because the record is silent on the issue and the State has the burden of establishing jurisdiction in a criminal prosecution, see *State v. Martin*, 241 Kan. 732, 742-43, 740 P.2d 577 (1987), Valladarez argues we must resolve this issue in his favor. However, the burden of establishing jurisdiction has never been extended to require a party to establish that a district magistrate judge, or any other judge, has been assigned to hear a particular case or to conduct an arraignment, especially when no objection has been stated by the opposing party. In this regard, the State notes that an appellant has the burden to designate a record affirmatively showing error and, without such a record, an appellate court presumes the action of the district court was proper. See *State v. Paul*, 285 Kan. 658, 670, 175 P.3d 840 (2008); *State v. Goodson*, 281 Kan. 913, 919, 135 P.3d 1116 (2006).

As we sort these various rules in this case of first impression, we determine that Valladarez should not be penalized for failing to raise the issue before the district court when our general rule has been that subject matter jurisdiction can be raised for the first time on appeal. In addition, the State should not be penalized for having failed to establish the assignment when no objection had been stated. Consequently, the case is remanded to the district court for determination of whether the district magistrate judge in this case was assigned and had jurisdiction to conduct felony arraignments. On remand, if it is determined that the district magistrate judge had been assigned to conduct felony arraignments, then Valladarez' pleas are valid. If however, it is determined that the district mag-

istrate judge had not been properly assigned to conduct felony arraignments, the felony pleas must be set aside.

We note, however, that a general administrative order or local rule in each judicial district authorizing its district magistrate judges to conduct felony arraignments would answer the question that has arisen in this case and that may arise in similar cases. Hence, in order to alleviate the need to remand future cases in which this issue might be raised, chief judges may consider the adoption of administrative orders or local rules stating whether that judicial district's magistrate judges, either collectively or individually, have jurisdiction to conduct arraignments in felony cases.

### Issue 2: Allocution

If on remand it is determined that the district magistrate judge had jurisdiction to conduct felony arraignments, there remains a question of whether Valladarez is entitled to a new sentencing hearing because the sentencing judge failed to personally ask Valladarez if there was any legal reason why judgment should not be rendered.

Two statutes, K.S.A. 22-3422 and K.S.A. 22-3424(e)(4), "provide the defendant with statutory rights which are historically known as 'allocution.'" *State v. Duke*, 256 Kan. 703, 724, 887 P.2d 110 (1994). Valladarez' complaint involves solely K.S.A. 22-3422 which requires that, when the defendant appears for judgment, the court must inform the defendant of the jury's verdict or the court's finding and also ask if the defendant "has any legal cause to show why judgment should not be rendered." If none is shown, the court shall pronounce judgment against the defendant. K.S.A. 22-3422.

Significantly, before the sentencing hearing, Valladarez filed a motion requesting a dispositional departure sentence and, later at sentencing, Valladarez made a statement on his own behalf. Thus, he was not denied an opportunity to address the court before it imposed the standard low-range presumptive sentences and ordered them to run concurrently.

Nevertheless, the State admits that the sentencing judge failed to ask Valladarez whether he knew of any legal reason judgment should not be imposed. But the State also cites authority establish-

ing that this error does not automatically require reversal of the sentence because a claim of denial of the process specified in K.S.A. 22-3422 is subject to a harmless error standard of review. See *State v. Bafford*, 255 Kan. 888, 889-90, 879 P.2d 613 (1994). Here, the State contends the error was harmless because Valladarez did not suffer any actual prejudice. See *Duke*, 256 Kan. at 723 (defendant failed to explain how the judge's failure to expressly state the requirements of K.S.A. 22-3422, to determine if there was any legal reason judgment should not be pronounced against him, prejudiced him; therefore, error was harmless).

Countering this argument, Valladarez offers three reasons he was prejudiced by the sentencing judge's failure to ask him if there was a legal reason why judgment should not be pronounced: (1) When he entered into the plea agreement, he expected that his criminal history would place him in a presumptive probation grid box; (2) the district magistrate judge did not inform him that the sentencing court was not required to follow the plea agreement, and (3) after absconding prior to the sentencing hearing and resisting arrest on the bench warrant, Valladarez had been charged with new crimes which, according to Valladarez, "had an effect on the judgment" in this case. These arguments fail, however, because the sentencing judge could have legally imposed a sentence even if Valladarez had been specifically asked if there was a legal reason judgment should not be imposed and Valladarez had listed these reasons.

With respect to Valladarez' first claim of prejudice, even though both Valladarez and the State were mistaken about his criminal history score at the time of his pleas, there is no evidence of an agreement to apply a specific criminal history score or evidence of a breach of the plea agreement. Nor was there any effort by Valladarez to set aside his pleas after his more serious criminal history score was discovered. See *State v. Schow*, 287 Kan. 529, 546, 197 P.3d 825 (2008) ("Where a defendant has pled guilty pursuant to a plea agreement which was based upon a mutual mistake as to defendant's criminal history score, the district court may consider the circumstances giving rise to the mutual mistake to the extent they may implicate the factors applicable to the existence of good

cause to withdraw a plea."); *State v. Haskins*, 262 Kan. 728, 731-32, 942 P.2d 16 (1997) (even though the defendant was mistaken about his criminal history score at the time he entered the plea, defendant knowingly entered a guilty plea); *Porter v. State*, 37 Kan. App. 2d 220, 223, 152 P.3d 89 (2007) (defendant's mistaken belief as to criminal history score did not render no contest plea to aggravated robbery involuntary).

As to the second claim of prejudice, although Valladarez was not specifically told that the sentencing judge was not bound to follow the sentencing agreement, he was told of the maximum sentences and fines and thus knew his sentences could be fairly substantial.

Finally, regarding the third claim of prejudice, the transcript of the sentencing hearing does show the sentencing judge became aware of new criminal charges filed against Valladarez. Yet, there is no showing that the existence of those charges affected the sentences in these cases or created a legal reason not to impose the sentences.

In summary, Valladarez makes conclusory statements and fails to establish that his substantial rights were prejudiced by the sentencing court's allocution error. See *State v. Borders*, 255 Kan. 871, 879-81, 879 P.2d 620 (1994). We conclude the allocution error was harmless and does not require resentencing. Therefore, if on remand the district court finds the district magistrate judge was assigned and had jurisdiction to conduct the felony arraignments in these cases, Valladarez need not be resentenced.

Remanded with directions for further proceedings consistent with this opinion.

McFARLAND, C.J., not participating.

HILL, J., assigned.